UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GERALD PROPHETE,

                               **Plaintiff,**

   - against -

**THE CITY OF NEW YORK,**

                               **Defendant.**
-------------------------------------------------------------x

**OPINION AND ORDER**

**07 CV 3061 (NG) (LB)**

**GERSHON, United States District Judge:**

*Pro se* plaintiff Gerald Prophete brings this action against defendant City of New York (the "City") pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the United States Constitution. Defendant now moves to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PROCEDURAL HISTORY**

On or about July 24, 2007, plaintiff filed his complaint in this action, naming the New York Police Department ("NYPD") as the defendant. On August 3, 2007, the court issued an order granting plaintiff leave to amend his complaint in accordance with Rule 8 of the Federal Rules of Civil Procedure. Finding plaintiff's complaint to be "vague and unintelligible," the court directed plaintiff to "set forth the legal basis and factual allegations to support his claims against each defendant, and the relief he is seeking with respect thereto." The court further found that plaintiff's complaint lacked a proper defendant[1] and directed plaintiff to "identify, as

---

[1] The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Admin. Code & Charter Ch. 16 § 396. As the court noted in its order, the NYPD could not be sued under § 1983 because it is an agency of the City that lacks independent legal existence.

best he can, the individual defendant(s) who were personally involved in the events that he claims violated his rights," and, in those instances where he did not know the true identity of a defendant, to refer to him or her as John or Jane Doe. Plaintiff was to name all of the defendants in the caption of his amended complaint. On August 14, 2007, plaintiff filed his Amended Complaint, naming only the City of New York as a defendant in the caption.

## FACTS

The following facts as alleged in the Amended Complaint are taken as true for purposes of this motion.[2]

Over a period of approximately eleven years, from July 1994 to October 2005, plaintiff encountered nine separate run-ins with the police. In his Amended Complaint, plaintiff describes the circumstances surrounding each of the incidents.

**I.  July 8, 1994**

On or about July 8, 1994, plaintiff was arrested for attempted assault in the first degree, menacing in the second degree, and reckless endangerment in the first degree, in violation of New York Penal Law §§ 110-120.10, 120.14, and 120.25, respectively. The arrest report states that plaintiff threatened to shoot Officer Kevin Spencer and displayed what appeared to be a gun

---

[2] Plaintiff attaches to his brief in opposition to defendant's motion to dismiss copies of various arrest reports, summonses, and court records related to his arrests. For purposes of a motion to dismiss, plaintiff's complaint is deemed to include "any written instrument attached to it as an exhibit or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citations omitted). It is also "well established" that the court can rely on "matters of public record." *Vasquez v. City of New York*, 2000 WL 869492, at *1 n.3 (S.D.N.Y. 2000). Such documents can be taken into consideration when deciding a motion to dismiss without converting the motion to one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). While the court has some question about whether documents attached to plaintiff's opposition brief can be appropriately considered on a motion to dismiss, defendant has not objected to their attachment. The court also notes that these documents have been used only to more fully understand the facts alleged by plaintiff and not as grounds for dismissal.

while Officer Spencer was "seated in the front driver's seat of his car on a city street that was heavy in pedestrian and vehicular traffic."

Plaintiff, on the other hand, alleges that Officer Spencer, Officer Figueredo, and another officer, John Doe, walked toward a group of individuals and pulled out their weapons. One of the officers then asked Officer Spencer, "Which one of them?" and after a moment of confusion over who to pick out of the group, Officer Spencer randomly chose plaintiff and a young boy. Both plaintiff and the young boy were placed under arrest and brought into the police station for processing. After a few hours of lock-up in a small cell, the parents of the young boy came to pick up their son, while plaintiff "was not so lucky." He was fingerprinted and served almost three days for offenses he claims he did not commit. Plaintiff was eventually arraigned at the Criminal Court of the City of New York, Kings County, but his case was adjourned on January 30, 1995 and dismissed on July 28, 1995.

## II.  November 4, 1994

On November 4, 1994, plaintiff, then a student at John Adams High School, was arrested for harassment in the second degree in violation of N.Y. Penal Law § 240.26. The day prior to his arrest, plaintiff had refused school safety officer Jane Doe's request that he hand over his personal pager to her. When Officer Doe attempted to forcefully remove his pager from him, plaintiff "shoved her hand to the side and ran to the nearest exit door way." The next morning, Officer Doe removed plaintiff from his class and took him to the dean's office, where he was handcuffed and made "ready for escort" to the Queens criminal court for processing. Officer Doe fingerprinted plaintiff and "locked [him] up for 48 hours." The case was adjourned on April 4, 1997 and dismissed on October 8, 1997.

3

### III. August 29, 1997

On August 29, 1997, Officer Paul Valdini arrested plaintiff for disorderly conduct in violation of N.Y. Penal Law § 240.20-5. The arrest report indicates that Office Valdini observed plaintiff "standing on the street with other individuals obstructing the regular flow of vehicular traffic and when [plaintiff] was instructed to disperse, [he] refused to comply thereby causing public inconvenience and alarm." Plaintiff, however, claims that he and several other individuals were stopped by a large group of police officers in "uniformed and riot gear" near the Brooklyn Bridge as they were heading back to a "peaceful march for the Abner Louima incident that took place on August 9, 1997." The police officers, believing that the crowd was not peaceful, placed plaintiff and other individuals under arrest and transported all of the arrestees to the Brooklyn criminal court for processing. Plaintiff "completely denied" the charges against him; he was given a court date for an appearance, but the case was dismissed on his hearing date.

### IV. September 23, 1999

On September 23, 1999, Officer Lawrence J. Coughlin issued plaintiff a summons for disorderly conduct. The summons indicates that plaintiff "intentionally erected public annoyance by making unreasonable noise and used abusive language . . . in the vicinity area of the Flatbush Ave LIRR Station in front of passengers and usher." Plaintiff claims that Officer Coughlin actually approached him when he was standing on the station platform because the officer caught plaintiff looking at him or in his direction "in a strange way he did not approve[] of." When Officer Coughlin asked plaintiff what his problem was, plaintiff answered, "What problem should there be?" Because the officer "did not like the way [plaintiff] answered," he asked plaintiff for identification, and plaintiff again questioned the officer about why he needed his identification. Nonetheless, plaintiff reached for his wallet in the back pocket of his pants,

but as he did so, Officer Lawrence "quickly grabbed [his] left wrist and subdue[d] [him] in handcuff[s]." He then escorted plaintiff to the police station on the lower level of the station, where he was "held against [his] will for four hour search without probable cause." Plaintiff was eventually acquitted of all charges.

**V.      June 15, 2002**

On June 15, 2002, Officer Wright issued plaintiff a summons for disorderly conduct at or around Church Avenue in Brooklyn, New York. Officer Wright, who had entered a deli grocery store at the same time as plaintiff, approached plaintiff as he was exiting the store and demanded to know what was in his brown bag. Officer Wright then searched plaintiff without his approval or probable cause and placed him under arrest for a brief time.

By letter dated July 18, 2002, the Criminal Court of the City of New York, Kings County, informed plaintiff that he did not need to return to court for the summons issued for this incident because the NYPD "has failed to file a legally acceptable accusatory instrument with this court."

**VI.      February 13, 2003**

On February 13, 2003, Officer Wright issued plaintiff a summons for disorderly conduct. According to the summons, Officer Wright observed plaintiff "block vehicular traffic and create a hazardous condition by standing in the roadway and refuse to move" and that "when [he] instructed [plaintiff] to move and allow traffic to pass, [he] stated 'Fuck you, I hate cops. This is a free country I can do what I want." Plaintiff claims that Officer Wright, who was driving an unmarked car holding three other police officers wearing civilian clothes, approached plaintiff at the corner of Brooklyn Avenue and Church Avenue and proceeded to search plaintiff "from head to toe without probable cause." The other officers, as identified by plaintiff, included an African American woman, a "Hispanic ascent" man, and an African American "with Hispanic ascent."

5

**VII. May 23, 2003**

On May 23, 2003, two police officers from the 67th Precinct, a white male and black female, pulled plaintiff over at or around Avenue L in Brooklyn, New York, and asked him for his license and registration. Upon informing plaintiff that his insurance identification was not coming up, the officers ordered him and his passenger to exit the vehicle. The officers permitted the passenger to leave but placed plaintiff under arrest and brought him down to the station for verification. There, plaintiff was held for two hours, after which he never saw the arresting officers again. Instead, Officer Wright, who took over the incident report, issued plaintiff a summons for reckless driving. On May 23, 2003, plaintiff was found guilty for the offense charged and was required to pay a fine of $80.00. Plaintiff maintains that the charge was "base[d] on a false statement made by PO Wright that [he] was driving reckless and operating a vehicle out [of] class."

**VIII. May 12, 2004**

On May 12, 2004, Officer Enriquez issued plaintiff a summons for riding his bicycle on a sidewalk. According to plaintiff, Officer Enriquez and his partner, an African American female, approached him while he was sitting on his bicycle and "gathering on a peaceful night" with his "associates." The female officer asked plaintiff to get off his bicycle and to put his hands in the air; she then "made a routine search . . . without probable cause." Officer Enriquez asked plaintiff to provide identification and ran a warrant check before issuing him a summons.

**IX. October 7, 2005**

On October 7, 2005, Officer Cortes issued plaintiff a summons for disorderly conduct. The summons indicates that Officer Cortes "observed [plaintiff] cause public inconvenience, annoyance, or alarm by making a[n] obscene gesture to a police officer" and "threaten a police

officer in public causing a crowd to gather." Plaintiff claims that Officer Cortes waved him over and told plaintiff to walk towards him. Although plaintiff asked why, the officer simply replied, "Just come," and plaintiff complied. Officer Cortes then questioned plaintiff about what he "just did," but plaintiff did not provide an answer because he did not know what the officer was talking about. Officer Cortes then asked plaintiff for his identification card, at which point plaintiff asked, "For what purpose?" Officer Cortes refused to give plaintiff a reason and placed him under arrest. Plaintiff was taken to the 67th Precinct and held in a cell for two hours while the police checked for outstanding warrants.

## DISCUSSION

### I. Standard of Review

On a motion to dismiss, the allegations in the complaint are accepted as true, and the court must draw all reasonable inferences in favor of plaintiff. *Zinermon v. Burch*, 491 U.S. 113, 118 (1990); *Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir. 1998). The court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some

7

factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007).

A *pro se* complaint, in particular, must be "liberally construed and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. Keycorp,* 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Erickson v. Pardus,* 127 S.Ct. 2197 (2007) (per curiam)). A court "must . . . interpret [*pro se* complaints] to raise the strongest arguments that [they] suggest . . . ; [t]his is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (internal citations and quotations omitted).

## II. Section 1983

In this case, plaintiff brings claims against the City pursuant to § 1983, alleging violations of his First and Fourth Amendment rights in connection with his nine encounters with the NYPD. Section 1983 governs civil rights actions against a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The statute is not itself a source of substantive rights but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Patterson*, 375 F.3d at 22.

### A. Statute of Limitations

The statute of limitations applicable to claims brought under § 1983 in New York is three years. *Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004); *Patterson*, 375 F.3d at 225. The claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis

for his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted), *cert. denied*, 450 U.S. 920 (1981). While accrual does not depend on plaintiff's receipt of "judicial verification that the defendants' acts were wrongful," claims brought under § 1983 accrue "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *see Barrett v. United States*, 689 F.2d 324, 333 (2d Cir. 1982). Specifically, the statute of limitations on a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process. *Wallace v. Kato*, 127 S. Ct. 1091, 1100 (2007); *Jovanovic v. City of New York*, 2008 WL 355515, at * 2 (S.D.N.Y. 2008).

In his Amended Complaint, plaintiff alleges that various police officers on nine separate occasions, over a period of approximately eleven years, falsely arrested him and/or issued a baseless summons to him in violation of his First and Fourth Amendment rights. The dates of the incidents are: (1) July 8, 1994; (2) November 4, 1994; (3) August 29, 1997; (4) September 23, 1999; (5) June 15, 2002; (6) February 13, 2003; (7) May 23, 2003; (8) May 12, 2004; and (9) October 7, 2005. However, plaintiff did not file his complaint until July 24, 2007, when the limitations period had already expired as to the first eight incidents. Plaintiff also does not, and could not, allege that he did not know or have reason to know of the "injury which is the basis for his action" on a date other than the date of his encounters with the police. Plaintiff was a party to all of the incidents and, in almost all cases, was issued a copy of the summons detailing the police officers' allegedly false version of events. Thus, plaintiff's claims arising out of his first eight encounters with the police are time-barred and accordingly dismissed.

### B.     Failure to State a Claim

Given the dismissal of the claims above, plaintiff's only remaining claim is one arising out the allegedly false arrest on October 7, 2005.  Plaintiff, however, fails to state a claim against the City under § 1983.

To state a claim under § 1983, "the conduct complained of must have been committed by a person acting under color of state law," and "the conduct complained of [must have] deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986)).  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is a "person" for § 1983 purposes and can be held liable for unlawful acts giving rise to a plaintiff's injuries.  *Weber v. Dell*, 804 F.2d 796, 802-03 (2d Cir. 1986).  Municipal liability, however, will not arise unless the municipality's customs, policies, or practices are the actual "moving force" behind the alleged wrongs.  *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 400 (1997); *see Monell*, 436 U.S. at 690-94.  This element of causation has two components.  First, plaintiff must establish "the existence of a municipal policy or custom" in order to show that the municipality took some action that caused plaintiff's injuries beyond merely employing the misbehaving employee.  Second, plaintiff must establish a causal connection—an "affirmative link"—between the policy and the alleged civil rights violation.  *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-20 (1985)).

Any claims asserting the existence of a municipality's "policy or custom" must be supported by specific facts that would at least circumstantially support the inference of the

existence of such policies. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). Most directly, a plaintiff can show a formal policy statement, ordinance, regulation, or decision that is "officially adopted and promulgated" by the municipality. *Monell*, 436 U.S. at 690. Plaintiff can also establish the municipality's failure to train employees so as to exhibit deliberate indifference to the constitutional rights of other, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992), or point to customs and practices so pervasive that the municipality is aware of, or should be aware of, such occurrences, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988).

Here, plaintiff's Amended Complaint contains no allegations that go to establishing municipal liability on the part of the City under § 1983. Plaintiff does not allege that the City officially adopted or promulgated any policy, that it failed to train its police officers, or that it was aware of a pervasive custom and practice by police officers. In other words, there are no allegations that the City was the "moving force" behind the alleged deprivation of plaintiff's constitutional rights. Given the complete absence of allegations as to whether the City of New York can be held liable under § 1983, plaintiff's claim against the City is dismissed.

C.   **Leave to Amend**

Although plaintiff's claims fail against the City, a liberal reading of the Amended Complaint indicates that plaintiff may allege a Fourth Amendment violation against the individual identified as Officer Cortes involved with his arrest and detention on October 7, 2005.[3] Because § 1983 does not impose vicarious liability on a municipality for the torts of its employees, *see Monell*, 436 U.S. at 691-94, plaintiff cannot seek relief from the City for the

---

[3] As discussed above, the three year statute of limitations period for § 1983 claims would bar any claims plaintiff wishes to assert against the other officers that are either named or described in plaintiff's Amended Complaint in connection with the first eight incidents.

11

alleged violations of his constitutional rights by individual police officers. However, while a claim may lie against Officer Cortes, plaintiff has not named the officer in the caption of his Amended Complaint, as the court directed him to do in its order dated August 3, 2007. Thus, Officer Cortes has not been served and is not a party to this action.

Despite plaintiff's failure to include the named individuals in the caption of his Amended Complaint, plaintiff did comply with the court's order that he identify those persons involved in the events he claimed violated his rights. Given plaintiff's *pro se* status, the court accordingly grants plaintiff leave of 30 days for the limited purpose of amending the caption of his Amended Complaint to include the name(s) of the individual police officer(s) identified or described in connection with his arrest on October 7, 2005. If plaintiff does not know the true identity of any of the individuals involved, he shall name him or her as John Doe or Jane Doe in the caption. If plaintiff fails to amend the caption as directed here, the court shall dismiss plaintiff's complaint and direct the Clerk of Court to close the case at that time.`

### III. State Law Claims

To the extent plaintiff is asserting any state law claims in connection with his nine incidents with the police, these claims are barred for failure to satisfy the notice of claim and the statute of limitations requirements of New York General Municipal Law §§ 50-e and 50-i. These sections provide that a plaintiff "asserting state tort law claims against a municipal entity or its employees acting in the scope of employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues." *Bailey v. Tricolla*, 1996 WL 733078, at *4 (E.D.N.Y. 1996); *see* N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1). Although § 50-e(5) permits applications for leave to serve a late notice of claim in certain circumstances, "the

extension period if granted is not to exceed the time limited for the commencement of the action." *Brown v. Metropolitan Transportation Authority*, 717 F. Supp. 257, 259 (S.D.N.Y. 1989). Both state and federal courts have strictly construed these provisions. *See Bailey*, 1996 WL 733078, at *4 (citing state and federal cases).

In this case, the latest incident alleged by plaintiff occurred on October 7, 2005, more than one year and nine months prior to the filing of his complaint on July 24, 2007. Plaintiff does not allege that he filed a notice of claim relating to any of the nine arrests, and even if plaintiff wanted to serve a late notice of claim under § 50-e(5), he would be unable to do so since the extension period cannot exceed the one year and ninety-day statute of limitations period. Thus, any state law claims raised by plaintiff against the City of New York are barred and hereby dismissed.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is granted, and plaintiff's claims against the City are dismissed with prejudice. The Clerk of Court is directed to enter judgment for the defendant.

Plaintiff, however, is given 30 days leave to amend the caption of his amended complaint, if he wants to include the name(s) of the individual police officer(s) identified or described in connection with his arrest on October 7, 2005. If plaintiff does not know the true identity of any of the individuals involved, he shall name him or her as John Doe or Jane Doe in the caption. If plaintiff fails or chooses not to amend his complaint within 30 days of this order, the court shall direct the Clerk of Court to close this case, as all the claims against the named defendant have been dismissed.

**SO ORDERED.**

_____/s_____
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
September 9, 2008